## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JULIUS ROBINSON
Reg No. 26190-177
U.S. Penitentiary Terre Haute
Terre Haute, IN 47802

        Plaintiff,

v.

    Case Number: _____

MICHAEL B. MUKASEY,
Attorney General
U.S. Department of Justice,
950 Pennsylvania Avenue, NW
Washington, DC 20530

       and

KAREN TANDY, Administrator
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, VA 22301

       and

HARLEY G. LAPPIN, Director
Federal Bureau of Prisons,
U.S. Department of Justice
320 First St., NW
Washington, DC 20534

       and

NEWTON E. KENDIG, II., M.D.
Medical Director
Health Services Division
Federal Bureau of Prisons
320 First St., NW
Washington, DC 20534

       and

RICHARD V. VEACH, Warden
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802

and

THOMAS WEBSTER, M.D.
Clinical Director
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802

and

ALAN R. DOERHOFF, M.D.
U.S. Penitentiary Terre Haute
4700 Bureau Road South
Terre Haute, IN 47802

and

JOHN DOES I-IV,
Individually and in their
official capacities,
Defendants.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF PURSUANT TO
*BIVENS v. SIX UNKNOWN AGENTS*, 403 U.S. 388, 390-97 (1971), AND THE
ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 551 *et seq.*

## I.
### Nature of Action

1.      This action is brought pursuant to (a) *Bivens v. Six Unknown Agents*, 403 U.S.
388, 390-97 (1971), for (i) violations and threatened violations of the Plaintiff's right to due
process under the Fifth Amendment to the United States Constitution; and (ii) violations and
threatened violations of the Plaintiff's right to be free from cruel and unusual punishment under
the Eighth Amendment to the United States Constitution; and (b) violations and threatened
violations of the Plaintiff's rights pursuant to the Administrative Procedure Act, 5 U.S.C. § 551
*et seq.* ("APA").

2.      The Plaintiff has been sentenced to death under federal law.  The Defendants are
the individuals charged by the federal government with carrying out the judgment of sentence of
death.  Unless Plaintiff's capital death sentence are overturned in another judicial proceeding or
via executive clemency, he will be killed by the defendants pursuant to an execution procedure
that violates  (a) the Fifth and Eighth Amendments; and (b) the APA.  The Plaintiff seeks a
preliminary and permanent injunction preventing the defendants from doing so, an Order
declaring that the defendants' proposed execution procedure violates the Fifth and Eighth
Amendments, and violates the APA, and such other equitable relief as the Court deems just and
proper.

3.      The Fifth Amendment's Due Process clause requires notice and the opportunity to
be heard before the deprivation of life, liberty, or property.  The defendants, however, refuse to
disclose the procedures that will be utilized in carrying out plaintiff's executions, preventing the

3

Plaintiff from determining whether any aspect of those procedures may constitute cruel and unusual punishment, and to consult medical experts concerning that possibility, in violation of the Due Process Clause.

4.     It is a violation of the Eighth Amendment to use an arbitrary, cruel, and/or unreliable method of execution, which inflicts unnecessary pain, particularly when such unnecessary pain is foreseeable. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (opinion of Reed, J.); *Furman v. Georgia*, 408 U.S. 238, 273 (1972) (citing *Resweber*). *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion) (holding Eighth Amendment prohibits the "unnecessary and wanton infliction of pain"). On information and belief, the means by which the defendants plan to kill the Plaintiff are arbitrary, cruel and/or unreliable, and cause unnecessary and wanton infliction of pain.

5.     The Plaintiff was sentenced to death pursuant to 21 U.S.C. § 848(e) of the Controlled Substances Act, 21 U.S.C. § 801 et seq. ("CSA"), which authorizes a sentence of death in certain circumstances. The CSA, however, neither specifies nor authorizes any of the defendants to determine the method by which a sentence of death may be carried out. Nevertheless, the defendants have promulgated regulations which purport to authorize that a sentence of death be carried out by the intravenous injection of lethal chemicals. Since they were not statutorily authorized, those regulations are *ultra vires* and must be set aside pursuant to 5 U.S.C. § 706(c)(2). Moreover, they were promulgated in violation of the APA's procedural requirements, and are arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

6.     In the CSA, Congress established a federal scheme that comprehensively regulates the manufacture, distribution, possession and dispensation of "controlled substances." The CSA

4

makes it unlawful to "dispense" any controlled substance except pursuant to the prescription of a practitioner possessing a registration issued pursuant to the CSA. 21 U.S.C. §§ 822, 829 (2000). To be effective, such a prescription "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a) (2005). The defendants intend to execute the plaintiff by administering a controlled substance - sodium thiopental - in violation of the CSA; *i.e.*, by dispensing that controlled substance not pursuant to a prescription issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice and possessing a valid registration issued pursuant to the CSA. In doing so, the defendants have arbitrarily and capriciously failed to exercise their authority to enforce the CSA.

7.    The claims in this complaint are cognizable under Bivens and the Fifth and Eighth Amendments, as well as the APA. This lawsuit is not, and should not be treated as, a successor habeas corpus petition. *See Nelson v. Campbell*, 541 U.S. 637 (2004). In this action, the Plaintiff does not challenge the validity of his convictions or death sentence. Rather, he claims that the means by which the defendants plan to kill him violate the Fifth and Eighth Amendments, and the APA.

## II.

### *Parties*

8.    Plaintiff Julius Omar Robinson is a United States citizen and a resident of the State of Texas. He is a death-sentenced inmate in the custody of the defendants, and under the control and supervision of the Federal Bureau of Prisons, a department of the United States Department of Justice ["BOP"]. He is incarcerated at the U.S. Penitentiary in Terre Haute, Indiana. If his capital conviction and/or death sentence are not overturned in another judicial

proceeding or through executive clemency, the defendants will kill him in the "death house" located on the grounds of the U.S. Penitentiary Terre Haute, which is operated and controlled by the defendants.

9.     Defendant Michael Mukasey is the Attorney General of the United States. The plaintiff was remanded into the Attorney General's custody upon his conviction and the imposition of his death sentence, and he is the final executive authority responsible for carrying out sentences of death against federal prisoners. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

10.     Defendant Karen Tandy is the Administrator of the United States Drug Enforcement Agency ["DEA"]. In that role, she is responsible for exercising the authority delegated to her by the Attorney General to enforce the CSA. She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

11.     Defendant Harley G. Lappin is the Director of BOP. As such, he is charged with prescribing and directing, and is authorized to prescribe and direct, the promulgation of rules and regulations for the BOP, including the rules and regulations for the conduct of prison operations and execution procedures. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

12.     Defendant Newton E. Kendig, II, M.D., is the Medical Director of BOP. In that position he is responsible for overseeing the provision of medical care to inmates at all BOP facilities, and for promulgating and implementing BOP policy with respect to medical care provided by BOP.

13.     Defendant R. V. Veach is the Warden of the United States Penitentiary at Terre Haute, Indiana, BOP facilities, which is the prison at which sentences of death are carried out

6

within the federal prison. In that position, he is charged with management of the U.S.

Penitentiary Terre Haute and the oversight and conduct of operations there, including the

oversight and conduct of executions carried out there. He is sued here in his individual and

official capacity for the purpose of obtaining declaratory and injunctive relief.

14.     Defendant Thomas Webster, M.D. is the Clinical Director at the United States

Penitentiary Terre Haute. In that position he is responsible for overseeing the provision of

medical care to inmates at that facility.

15.     Defendant Alan R. Doerhoff, M.D. is employed by BOP as member of, or

consultant for, the execution team at the United States Penitentiary Terre Haute. In that position,

he is responsible for the development of execution procedures. Dr. Doerhoff also participates in

all executions by placing and monitoring intravenous lines ("IV"), monitoring levels of

consciousness, and making determinations of death.

16.     John Does I - V are employed by BOP to consult with, and/or prepare for and

carry out the plaintiff's executions. The plaintiff do not know, and the defendants have not

revealed, their identities.

17.     The defendants are acting, and each of them at all times relevant hereto were

acting, in their respective official capacities with respect to all acts described herein, and were in

each instance acting under the color and authority of federal law. Upon information and belief,

unless preliminarily and permanently enjoined, the defendants, and each of them, intend to act in

their respective official capacities and under the authority of federal law in executing the

Plaintiff, in violation of the Plaintiff's constitutional and statutory rights.

### III.

### Jurisdiction and Venue

18.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States; under *Bivens*, 403 U.S. at 390-97, in that it seeks to secure prospective, equitable relief directly under the Constitution, specifically the Fifth and Eighth Amendments; under 28 U.S.C. § 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, in that one purpose of this action is to secure preliminary and permanent injunctive relief.  Judicial review of the agency action at issue is authorized by the APA, 5 U.S.C. §§ 702, 704 and 706.

19.    This Court has venue under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims made herein - *i.e.*, the formulation of the BOP's procedures governing the execution of condemned inmates - took place in this District. Alternatively, this Court has venue under 28 U.S.C. § 1391(b)(3) because defendants Mukasey, Lappin and Kendig reside here.

### IV.

### Facts

20.    The plaintiff incorporates by reference all facts and allegations contained in paragraphs 1 - 19.

21.    The Plaintiff was convicted of murder and sentenced to death in 2001 in the United States District Court for the Northern District of Texas.  In 2004, his conviction was affirmed on direct appeal.  In 2005, Plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. § 2255 in the United States District Court for the Northern District of Texas.  The § 2255 petition is pending before the district court.

8

22.    The defendants intend to execute the Plaintiff by injecting three chemicals, administered intravenously in sequence, separated by injections of saline solution. The chemical combination the defendants intend to use to execute the Plaintiff includes (a) sodium thiopental or sodium pentothal (an ultra short-acting barbiturate), purportedly to induce an anesthetic state; (b) pancuronium bromide or pavulon (a curare-derived agent that paralyzes all skeletal or voluntary muscles, but which has no effect whatsoever on awareness, cognition or sensation), and (c) potassium chloride (an extraordinarily painful chemical which activates the nerve fibers lining the inmate's veins and which interferes with the rhythmic contractions of the heart, causing cardiac arrest.) This "cocktail" of drugs causes death by suffocation and heart attack, which are extraordinarily and excruciatingly painful. While this "cocktail" supposedly will render the Plaintiff insensible to the pain of his death, it in fact can and will merely cast a "chemical veil" over this excruciating pain, leaving Plaintiff conscious but trapped in a paralyzed body wracked with the pain of suffocation and a heart attack. At the same time, this "cocktail" will make it impossible for those observing the execution - including witnesses to it, as well as Dr. Doerhoff and others charged with actually carrying out the execution - to recognize and prevent the gratuitous pain and suffering being inflicted upon the Plaintiff.

A.    **The Lethal Injection Regulations**

23.    The Plaintiff was sentenced to death pursuant to § 848(e) of the CSA, which authorizes the imposition of a death sentence in certain circumstances. The CSA does not, however, specify the means by which an individual sentenced to death under the statute is to be executed, nor does it authorize any agency to make that determination, or to promulgate any regulations implementing the death sentence authorized by the CSA.

24.     Nevertheless, on November 30, 1992, the Department of Justice ("DOJ")
published a proposed rule purporting to "establish[] procedures" for carrying out a death sentence
imposed under 21 U.S.C. § 848(1). 57 Fed. Reg. 56536 (1992).  In response, DOJ received
twenty-three comments concerning the proposed rule from medical associations and physicians,
criminal defense attorneys, advocates for prisoners' rights and the media, and from private
citizens.

25.     The comments received by DOJ included those of United States Congressman
Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the U.S.
House of Representatives, who stated that only Congress could establish such procedures, and
that the proposed rule was therefore beyond the scope of DOJ's powers.  DOJ rejected this
comment, stating that it "does not need explicit authority to issue regulations establishing death
penalty procedures." 58 Fed. Reg. 4898 (1993).

26.     Another commenter urged that lethal injection is an unnecessarily painful method.
DOJ rejected this comment without further inquiry or analysis, stating simply that it "disagree[d],
and regard[ed] lethal injection as less problematic than the alternatives." *Id.*

27.     DOJ also received comments "from medical associations and physicians objecting
to the provisions that a physician be present at the execution, [58 Fed. Reg. 4898] § 26.4(c)(1),
and that a physician or other qualified personnel determine that the prisoner has died, § 26.4(g)."
*Id.* The American Medical Association (AMA) and the American College of Physicians "agreed
with most other physicians and medical associations commenting on the rule that medical ethics
prohibit physicians from pronouncing the death of a prisoner. The two associations and other
commenters also stated that medical ethics prohibit physicians from even attending an execution
in a professional capacity." In response, DOJ stated:

10

> [I]t cannot be said at this point that the statements of medical ethics offered by the associations and physicians who commented on the proposed rule necessarily conflict with orderly, professional executions. Perhaps, when it has developed detailed procedures for lethal injection, or has experience administering the injections, the Department will conclude that a physician need not be present. The proposed rule contemplated that the Bureau of Prisons might wish to select someone other than a doctor - a coroner, for instance - to pronounce death; here, too, there is no reason to insist in the rule itself that death might be pronounced by a physician.

> The rule has therefore been revised to eliminate the requirement of a physician's presence, and to eliminate the reference to a physician determining death. Because the Department may conclude that a physician's presence is necessary to a responsible execution, physician participation will not be barred.

*Id.* DOJ did not address the question whether a physician's presence was required for any reason other than to pronounce death.

28.     Lethal injection is considered the most humane method of euthanasia for animals, but the Humane Society of the United States declares firmly that the chemicals must be injected by "well[-]trained and caring personnel."  For several reasons, the absence of a physician from the execution chamber is likely to lead directly to the infliction of unnecessary and otherwise-avoidable pain:

   a.     Prisoners differ in their physical makeup, as well as their drug tolerance and drug use histories. Therefore, some prisoners may need a higher dosage of sodium thiopental than others before losing consciousness and sensation. The proper dosage of sodium thiopental cannot be determined by reference to a "one-size-fits-all" protocol; it must be determined by a physician.

   b.     If the different chemicals administered to cause death are administered out of order, "there is a near certainty that the inmate will experience excruciating pain during a lethal injection even without the outside appearance of pain because the pancuronium bromide paralyzes him." A physician's presence is necessary in order to ensure that this does not occur.

11

c.  Physicians have particular difficulty locating suitable veins for intravenous injections among individuals with diabetes, heavily-pigmented skin, obesity or extreme muscularity, as well as the very nervous or drug users. "Nearly one quarter of prison inmates' veins may be inaccessible because they are deep, flat, covered by fat or damaged by drug use." Nonphysician executioners who lack training in locating suitable veins may insert the needle (a) into a sensitive body part, such as the groin; (b) in the wrong direction, so that chemicals flow away from the inmate's heart, thereby hindering and slowing absorption; (c) intramuscularly, rather than intravenously.

Deborah Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution and Lethal Injection and What it Says About Us*, 63 Ohio St. L.J. 63, 108-11 (2002).

29.    The defendants rejected these comments and issued a Final Rule that purportedly took effect February 18, 1993. 58 Fed. Reg. 4898 (1993) (the "Final Rule"). The Final Rule stated merely that "a sentence of death shall be executed ... by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal." 28 C.F.R. § 26.3(a)(4). The regulations adopted by the defendants do not specify what lethal substances shall be used to kill condemned inmates, the method of delivery, what amount of such substances shall be used, in what order such substances shall be administered, or by whom they shall be administered.

30.    On information and belief, however, on one or more occasions since February 18, 1993, the defendants have adopted further regulations specifying in detail the means and method by which executions by lethal injection are to be carried out (the "Lethal Injection Protocol").

31.     The defendants have neither disclosed the Lethal Injection Protocol nor have they made public all material and relevant details surrounding the process by which the defendants adopted the Lethal Injection Protocol. The Plaintiff has asked the defendants to specify the procedures to be used in executing the Plaintiff, but the defendants have refused to do so.

32.     On information and belief, the defendants and/or their agents simply adopted lethal injection protocols used by one or more states, without providing public notice and opportunity for comment, and without investing meaningful and independent efforts designed to ensure that the Lethal Injection Protocol complies with contemporary medical standards and long-standing constitutional standards that forbid the infliction of excruciating, cruel, and unusual pain and punishment.

**B.      Lethal Injection**

**1.      The Chemicals Used in the Lethal Injection Protocol**

33.     The defendants have repeatedly refused to divulge the specifics of the Lethal Injection Protocol, but have informed the Plaintiff that they intend to execute the Plaintiff using sodium thiopental, pancuronium bromide, and potassium chloride. This "cocktail" of drugs causes death by suffocation and heart attack, which are extraordinarily and excruciatingly painful. While the administration of sodium thiopental supposedly will render the Plaintiff insensible to the pain of their deaths, on information and belief, the Lethal Injection Protocol creates a substantial risk that it will not do so, and that the administration of pancuronium bromide will merely cast a "chemical veil" over the excruciating pain experienced by the Plaintiff, leaving him conscious but trapped in a paralyzed body wracked with the pain of suffocation by oxygen starvation, and by the resulting heart attack, while making it impossible for those observing the execution - including witnesses as well as Dr. Doerhoff and John

Does I-IV, who are charged with actually carrying out and monitoring the execution -

to recognize and prevent the gratuitous pain and suffering being inflicted upon the Plaintiff.

34.    Sodium thiopental is an ultra short-acting barbiturate with a very short shelf life

in liquid form. It is distributed in powder form to increase its shelf life, and must be mixed into

a liquid solution by trained personal before it can be injected. When anesthesiologists use

sodium thiopental, they do so for the purpose of temporarily anesthetizing patients in order to

permit sufficient time to intubate the trachea and institute mechanical support of ventilation

and respiration. Once this has been achieved, additional drugs are administered to maintain

a "surgical depth" or "surgical plane" of anesthesia (i.e., a level of anesthesia deep enough

to ensure that a surgical patient feels no pain and is unconscious for the duration of the surgical

procedure). The medical utility of sodium thiopental derives from its ultra short-acting

properties: if unanticipated obstacles hinder or prevent successful intubation, patients will

quickly regain consciousness and will resume ventilation and respiration on their own.

35.    These benefits of thiopental in the operating room engender serious risks in

the execution chamber. The dose of sodium thiopental used in the execution procedure is, on

information and belief, administered in a single injection from a single syringe. By contrast,

on information and belief, the original design of the Lethal Injection Protocol called for

the continuous intravenous administration of an ultra short-acting barbiturate. The use of

a continuous administration of the ultra short-acting barbiturate is essential to ensure continued

and sustained unconsciousness during the administration of pancuronium bromide and potassium

chloride. The failure to administer a continuous infusion of thiopental creates a significant, but

completely avoidable and therefore unnecessary, risk that the condemned inmate will consciously

experience muscular paralysis, without loss of consciousness or sensation, during the

14

excruciating pain of both suffocation and the intravenous injection of potassium chloride. This unnecessary risk is also present in the Lethal Injection Protocol because the sedative effect of sodium thiopental can be neutralized by the second chemical typically used, pancuronium bromide.

36.    Sensitivity to sodium thiopental varies greatly among individuals. The necessary dosage needed for effective use of sodium thiopental is susceptible to a number of factors, including body weight, body fat, prior drug usage, the presence in the body of other sedating agents (which may be provided to condemned inmates in the period immediately before their execution), and the level of anxiety or stress the inmate is experiencing. The variable sensitivity and the range of known and unknown factors that influence the effectiveness of sodium thiopental make it imperative that the drug be administered by qualified individuals, in order to ensure that it brings about a deep, lengthy anesthetized state in a condemned individual, and prevents the infliction of unnecessary pain. Unless it is administered by a qualified individual, the condemned person may lose consciousness for only a brief period, leaving him sensible to the horrific pain resulting from the administration of potassium chloride, but unable to communicate that pain to those administering the lethal injection because of the paralyzing effect of pancuronium bromide. On information and belief, the Lethal Injection Protocol does not call for sodium thiopental to be administered by a person qualified to administer it.

37.    Sodium thiopental is a Schedule III controlled substance under the CSA. Schedule III drugs have an abuse potential which is slightly less than those drugs which possess a severe psychological or physical dependence liability; have an accepted medical use in the United States; and, are available for practitioners to prescribe, dispense and administer. *See generally,* 28 U.S.C. § 1308.13.

38.    The second chemical involved in the lethal injection process, pancuronium bromide, or pavulon, is a derivative of curare that acts as a neuromuscular blocking agent. Pancuronium bromide paralyzes all skeletal muscles, including the diaphragm, causing the inmate to be unable to move or breathe.

39.    While pancuronium bromide causes muscular paralysis (including the diaphragm, stopping respiration), it does not affect sensation, consciousness, cognition, or the ability to feel or perceive pain and suffocation.  If the sodium thiopental and potassium chloride are given in doses sufficient to cause death, then there is no rational or medically justifiable place in the Lethal Injection Protocol for pancuronium bromide.  It is not necessary to cause death, and its function in the Lethal Injection Protocol is solely cosmetic or aesthetic.  By preventing the prisoner's muscles from moving and indicating pain, suffering or emotion, it makes the prisoner appear serene.  However, pancuronium bromide can neutralize the sedating effect of sodium thiopental, and to the extent it does, or to the extent insufficient sodium thiopental is administered, pancuronium bromide masks the excruciating pain suffered by the inmate as he suffocates by oxygen starvation, and endures cardiac arrest.

40.    If, during his execution, an unconscious condemned person is paralyzed after being administered pancuronium bromide and then regains consciousness, it is almost a certainty that the execution staff, including any attending physician or medical personnel, would be completely unaware that he had become conscious.  A person could regain consciousness in those circumstances because (1) less than the necessary dose of sodium thiopental had been successfully injected into the individual's bloodstream, (2) the sensitivity to sodium thiopental varies greatly among the population, and some individuals (particularly those who have been building additional resistance by taking Valium or other anti-anxiety medication) are

16

significantly more resistant to sodium thiopental than others, or (3) the duration of the

effectiveness of the ultra-short acting sodium thiopental has worn off by the time the next drug

is administered. In such a scenario, the execution staff, including any attending physician or

medical personnel, and witnesses would be completely unaware that the condemned person was

experiencing excruciating pain from suffocation (because the diaphragm muscles would be

paralyzed), burning in the veins from the injection of the potassium chloride, and finally a

myocardial infarction induced by the potassium chloride. The signs and symptoms that indicate

how deeply a patient is anesthetized are visibly subtle. On information and belief, the Lethal

Injection Protocol does not provide for the presence in the execution chamber of staff with the

training, experience, or expertise to assess these signs and symptoms, or for the presence in the

execution chamber of any equipment capable of determining whether a prisoner to whom

pancuronium bromide has been administered is, in fact, unconscious.

41.    At one time, it was considered acceptable for veterinarians to euthanize household

pets such as dogs and cats using a combination of a sedative such as sodium thiopental and a

muscular blocking agent such as pancuronium bromide. However, this practice is now banned

by numerous state statutes, and by veterinary guidelines in this and other countries for precisely

the reasons outlined above. Just as it fails to comport with the evolving "standard of decency"

regarding the euthanizing of household pets, this practice violates contemporary standards of

decency designed to prevent the infliction of unnecessary, excruciating pain and suffering on

human beings.

42.    The third and final chemical administered in the Lethal Injection Protocol is

potassium chloride. This chemical induces cardiac arrest in the inmate by activating the nerve

fibers lining the inmate's veins and interfering with the rhythmic contractions of the heart.

17

On information and belief, the defendants have chosen potassium chloride - the perception

or experience of which is extraordinarily painful - to induce cardiac arrest despite the availability

of other chemicals which accomplish the same purpose while inflicting substantially less, or no,

pain.

43.    On at least 10 occasions since 1977, inmates executed by means of lethal injection

similar or identical to the Lethal Injection Protocol at issue here have suffered violent and painful

reactions to the chemicals administered during the execution:

     a.    On December 13, 1988, in Texas, Raymond Landry was
pronounced dead 40 minutes after being strapped to the
execution gurney and 24 minutes after the drugs first started
flowing into his arms. Two minutes after the drugs were
administered, the syringe came out of Landry's vein,
spraying the deadly chemicals across the room toward
witnesses. The curtain separating the witnesses from the
inmate was then pulled, and not reopened for fourteen
minutes while the execution team reinserted the catheter
into the vein. Witnesses reported "at least one groan."

     b.    On May 24, 1989, in Texas, Stephen McCoy had such
a violent physical  reaction to the drugs (heaving chest,
gasping, choking, back arching off the gurney, etc.) that
a male witness fainted, crashing into and knocking over
another witness.

     c.    On September 12, 1990, in Illinois, Charles Walker
suffered excruciating pain during his execution because
of equipment failure and human error. According to an
engineer from the Missouri State Prison retained by the
State of Illinois to assist with Walker's execution, a kink
in the plastic tubing going into Walker's arm stopped the
deadly chemicals from reaching Walker. In addition, the
intravenous needle was inserted pointing at Walker's
fingers instead of his heart, prolonging the execution.

     d.    On March 10, 1992, in Oklahoma, Robyn Lee Parks had
a violent reaction to the drugs used in his execution. Two
minutes after the drugs were dispensed, the muscles in his

jaw, neck, and abdomen began to react spasmodically for approximately 45 seconds. Parks continued to gasp and violently gag until death came, eleven minutes after the drugs were first administered. A Tulsa World reporter wrote that the execution looked "painful and ugly," and "scary."

e.   According to an Associated Press reporter, on May 7, 1992, in Texas, Justin Lee May "went into a coughing spasm, groaned and gasped, lifted his head from the death chamber gurney and would have arched his back if he had not been belted down. After he stopped breathing, his eyes and mouth remained open."

f.   On May 10, 1994, in Illinois, after the execution of John Wayne Gacy began, the lethal chemicals unexpectedly solidified, clogging the IV tube that lead into Gacy's arm, and prohibiting any further passage. Blinds covering the window through which witnesses observed the execution were drawn, and the execution team replaced the clogged tube with a new one. Ten minutes later, the blinds were reopened and the execution process resumed. It took 18 minutes to complete. Anesthesiologists blamed the problem on the inexperience of prison officials who were conducting the execution, saying that proper procedures taught in "IV 101" would have prevented the error.

g.   On May 3, 1995, in Missouri, seven minutes after the lethal chemicals began to flow into Emmitt Foster's arm, the execution was halted when the chemicals stopped circulating. With Foster gasping and convulsing, the blinds were drawn so the witnesses could not view the scene. Death was pronounced thirty minutes after the execution began, and three minutes later the blinds were reopened so the witnesses could view the corpse. According to the Washington County Coroner who pronounced death, the problem was caused by the tightness of the leather straps that bound Foster to the execution gurney; they were so tight that the flow of chemicals into the veins was restricted. Foster did not die until several minutes after a prison worker finally loosened the straps.

h.   On May 8, 1997, in Oklahoma, Scott Dawn Carpenter was pronounced dead 11 minutes after the lethal injection was administered. As the drugs took effect, Carpenter began

19

to gasp and shake. This was followed by a guttural sound, multiple spasms and gasping for air, until his body stopped moving three minutes later.

i.     On April 23, 1998, in Texas, it took two attempts to complete the execution of Joseph Cannon. After Cannon made his final statement, the execution process began. A vein in Cannon's arm collapsed and the needle popped out. Seeing this, Cannon lay back, closed his eyes, and exclaimed to the witnesses, lilt's come undone." Officials then pulled a curtain to block the view of the witnesses, reopening it fifteen minutes later when a weeping Cannon made a second final statement and the execution process resumed.

j.     On June 28, 2000, in Missouri, Bert Leroy Hunter repeatedly coughed and gasping for air after the lethal chemicals were injected and before he lapsed into unconsciousness. A witness reported that Hunter had "violent convulsions. His head and chest jerked rapidly upward as far as the gurney restraints would allow, and then he fell quickly down upon the gurney. His body convulsed back and forth .. repeatedly.... He suffered a violent and agonizing death."

k.     On December 13, 2006, in Florida, Angel Diaz continued to move after the first injection was administered, and was squinting and grimacing as he tried to mouth words. A second dose was then administered, and 34 minutes passed before Mr. Diaz was declared dead.  After performing an autopsy, the Medical Examiner, Dr. William Hamilton, stated that Mr. Diaz's liver was undamaged, but that the needle had gone through Mr. Diaz's vein and out the other side, so the deadly chemicals were injected into soft tissue, rather than the vein.

Michael L. Radelet, *Some Examples of Post-Furman Botched Executions*,(May 24, 2007),

available at http://www.deathpenaltyinfo.org/article.php?scid=8&did=478.

44.     In addition, during numerous executions, difficulties in locating veins suitable for intravenous lethal injection have resulted in significant delays and other torment of condemned prisoners:

a.  March 13, 1985, Texas. Because of Stephen Peter Morin's history of drug abuse, the execution technicians were forced to probe both of Morin's arms and one of his legs with needles for nearly 45 minutes before they found a suitable vein.

b.  August 20, 1986, Texas.  Randy Woolls, a drug addict, was required to help the execution technicians find a useable vein for the execution.

c.  June 24, 1987, Texas. Because of collapsed veins, it took nearly an hour to complete the execution of Elliot Rod Johnson.

d.  January 24, 1992, Arkansas. It took medical staff more than 50 minutes to find a suitable vein in Rickey Ray Rector's arm. Witnesses were kept behind a drawn curtain and not permitted to view this scene, but reported hearing Rector's eight loud moans throughout the process. During the ordeal Rector (who suffered from serious brain damage) helped the medical personnel find a vein.

e.  April 23, 1992, Texas. Billy Wayne White was pronounced dead 47 minutes after being strapped to the execution gurney. The delay was caused by difficulty finding a vein. White had a long history of heroin abuse. During the execution, White attempted to assist the authorities in finding a suitable vein.

f.  January 23, 1996, Virginia. The execution of Richard Townes, Jr. was delayed for 22 minutes while medical personnel struggled to find a vein large enough for the needle. After unsuccessful attempts to insert the needle through the arms, the needle was finally inserted through the top of Mr. Townes' right foot.

g.  July 18, 1996, Indiana. Because of unusually small veins, it took one hour and nine minutes for Tommie J. Smith to be pronounced dead after the execution team began sticking needles into his body. For sixteen minutes, the execution team failed to find adequate veins, and then a physician was called. Smith was given a local anesthetic. and the physician twice attempted to insert the tube in Smith's neck. When that failed, an angio-catheter was inserted in Smith's foot. Only then were witnesses permitted to view

21

the process. The lethal drugs were finally injected into Smith 49 minutes after the first attempts, and it took another 20 minutes before death was pronounced.

h.  June 13, 1997, South Carolina. Because Michael Eugene Elkins's body had become swollen from liver and spleen problems, it took nearly an hour to find a suitable vein for the insertion of the catheter. Elkins tried to assist the executioners, asking, "Should I lean my head down a little bit?" as they probed for a vein. After numerous failures, a usable vein was finally found in Elkins's neck.

i.  August 26, 1998, Texas. The execution of Genaro Ruiz Camacho was delayed approximately two hours due, in part, to problems finding suitable veins in Camacho's arms.

j.  October 5, 1998, Nevada.  It took 25 minutes for the execution team to find a vein suitable for the lethal injection of Roderick Abeyta.

k.  May 3, 2000, Arkansas. Christina Marie Riggs' execution was delayed for 18 minutes when prison staff couldn't find a suitable vein in her elbows. Finally, Riggs agreed to the executioners' requests to have the needles in her wrists.

l.  June 8, 2000, Florida. It took executioner technicians 33 minutes to find suitable veins for the execution of Bennie Demps.  "They butchered me back there," said Demps in his final statement. "I was in a lot of pain. They cut me in the groin; they cut me in the leg. I was bleeding profusely. This is not an execution, it is murder." The executioners had no unusual problems finding one vein, but because Florida protocol requires a second alternate intravenous drip, they continued to work to insert another needle, finally abandoning the effort after their prolonged failures.

m.  December 7, 2000, Texas. The execution of Claude Jones, a former intravenous drug abuser, was delayed 30 minutes while the executioners struggled to insert an IV into a vein. One member of the execution team commented, "They had to stick him about five times. They finally put it in his leg."

n.  November 7, 2001, Georgia. Jose High was pronounced dead more than one hour after his execution began. After

attempting to find a useable vein for 39 minutes, the emergency medical technicians under contract to do the execution abandoned their efforts. Eventually, one needle was stuck in High's hand, and a physician was called in to insert a second needle between his shoulder and neck.

o.    May 24, 2007. Ohio.  Christopher Newton. According to the Associated Press, "prison medical staff" at the Southern Ohio Correctional Facility struggled to find veins on each of Newton's arms during the execution. Newton, who weighted 265 pounds, was declared dead almost two hours after the execution process began. The execution team stuck Newton at least ten times with needles before getting the shunts in place were the needles are injected.

p.    June 26, 2007. Georgia.  John Hightower took approximately 40 minutes for the nurses to find a suitable vein to administer the lethal chemicals, and death was not pronounced until almost an hour after the execution process began.

*Id.*

## 2.    Lethal Injection Protocol, Personnel and Processes

45.    The preparation of drugs, particularly for intravenous use, is a technical task requiring significant training in pharmaceutical concepts and calculations.  There are many risks associated with drug preparation that, if not properly addressed by properly credentialed and trained personnel, further elevate the risk that an inmate will consciously experience excruciating pain during lethal injection.

46.    The correct and safe management of intravenous drug and fluid administration requires a significant level of professional acumen, and cannot be performed adequately by personnel lacking the requisite training and experience.  The great majority of nurses are not trained in the use of ultra short-acting barbiturates; indeed, this class of drugs is normally used only by nurses who have significant experience in intensive care units and as nurse anesthetists.

23

Very few other medical personnel, such as paramedics or phlebotomists, are trained or experienced in the use of ultra short acting barbiturates.

47.    The risk of inflicting severe and unnecessary pain and suffering upon the Plaintiff in the Lethal Injection Protocol is particularly grave because, upon information and belief, the procedures and protocols designed by the defendants do not include safeguards regarding the manner in which the execution is to be carried out, do not establish the minimum qualifications and expertise required of the personnel performing critical tasks in the Lethal Injection Protocol, and do not establish appropriate criteria and standards that these personnel must meet in carrying out the Lethal Injection Protocol.

48.    On information and belief, the Lethal Injection Protocol does not call for available medical equipment which could alert defendants and their agents that the sodium thiopental has failed or is no longer effective but the pancuronium bromide has taken effect, leaving the condemned prisoner conscious but experiencing extreme pain.  The Lethal Injection Protocol violates the Plaintiff's constitutional rights by reason of the absence of procedures for the use of medical monitoring equipment and other such necessary procedures and properly-trained execution personnel to respond appropriately to the information revealed by such medical equipment.

49.    Upon information and belief, the Lethal Injection Protocol fails to address additional factors necessary to ensure compliance with constitutional requirements, including but not limited to, the following factors:

a.    the minimum qualifications , expertise, and training required for the different personnel performing the tasks involved in the Lethal Injection Protocol;

b.    the methods for obtaining, storing, mixing, and appropriately labeling the drugs, the chain of custody for the lethal substances, the minimum qualifications and expertise required for the person who will be determining the concentration and dosage of each drug to give, and the criteria that shall be used in exercising this discretion;

c.    the consideration of individualized factors, including body weight and individual sensitivity to or tolerance for the chemicals used in the Lethal Injection Protocol, that affect the appropriate dosage of each of the chemicals to be administered;

d.    the manner in which the IV tubing, three-way valve, saline solution or other apparatus shall be modified or repaired in the event it malfunctions during the execution process, the minimum qualifications and expertise required of the person who shall have the discretion to decide to attempt such action, and the criteria that shall be used in exercising this discretion;

e.    the manner in which a monitoring system shall be installed and utilized to ensure that the Plaintiff deeply sedated while dying; and the qualifications and expertise required for the person who operates this equipment;

f.    the manner in which the IV catheters shall be inserted into the condemned prisoner, the minimum qualifications and expertise required for the person who is given the responsibility and discretion to decide when efforts at inserting the IV catheters should be abandoned in favor of some other constitutionally acceptable procedure; and the manner in which the condition of the condemned prisoner will be monitored to confirm that proceeding to the next step of the Lethal Injection Protocol would not inflict severe and unnecessary pain and suffering on the Plaintiff;

g.    the minimum qualifications and expertise required of the person who is given the responsibility and discretion to order the staff to divert from the established protocols if necessary to avoid inflicting severe and unnecessary pain and suffering on the Plaintiff, and the criteria to be used in exercising this discretion; and

        h.     the minimum qualifications and expertise required of the person who is given the responsibility and discretion to ensure that appropriate procedures are followed in response to unanticipated problems or events arising during the Lethal Injection Protocol, and the criteria that shall be used in exercising this discretion.

50.     Although the Lethal Injection Protocol calls for the dispensation and administration of chemicals which are controlled substances under the CSA, on information and belief, it calls for those controlled substances to be dispensed and administered without the prescription of a practitioner issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice and possessing a registration under the CSA. 21 U.S.C. §§ 822, 829 (2000); 21 C.F.R. §§ 1301.11; 1306.04(a) (2005).

### C.    **Exhaustion of Remedies**

51.     Plaintiff has exhausted his administrative remedies. He filed an inmate filing a complaint with the U.S. Penitentiary Terre Haute, in compliance with the Administrative Remedy Procedure for Inmates, Bureau of Prisons Program Statement 1330.13, challenging the Lethal Injection Protocol on the grounds that it violates the Fifth Amendment by failing to provide notice of the procedure the defendants intend to use to execute him, as well as his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's complaint was denied on the ground that no court had ruled that the Lethal Injection Protocol constitutes cruel and unusual punishment and that this Procedure does not cause unnecessary pain and suffering, while providing no details regarding the specific procedures by which defendants intend to execute him. In accordance with the Administrative Remedy Procedure for Inmates, Plaintiff appealed this denial first to defendant Veach, the Warden, second to the Regional Director, of the Federal Bureau of Prisons, and third to the Office of General Counsel for the Federal Bureau of

Prisons. At each stage, Plaintiff's appeal was denied on the same grounds: that no court had ruled that the Lethal Injection Protocol constitutes cruel and unusual punishment and that the Lethal Injection Protocol does not cause unnecessary pain and suffering, while providing no details regarding the specific procedures by which the defendants intend to execute him.[1]

52.    No further administrative remedies exist for the Plaintiff to exhaust.

## V.

### First Claim: Fifth Amendment Violation - Denial of Due Process

53.    Plaintiff incorporate by reference the allegations of paragraphs 1 through 52.

54.    The Due Process clause requires notice and the opportunity to be heard before the deprivation of life, liberty, or property.

55.    The defendants, acting under color of federal law, have refused to disclose the procedures that will be utilized in carrying out Plaintiff's executions, preventing the Plaintiff from determining whether any aspect of the Lethal Injection Protocol may constitute cruel and unusual punishment, and to consult medical experts concerning that possibility, in violation of the Due Process Clause.

## VI.

### Second Claim: Eighth Amendment Violation - Cruel and Unusual Punishment

56.    Plaintiff incorporate by reference the allegations of paragraphs 1 - 55.

57.    The Eighth Amendment forbids the government, in carrying out a death sentence, to inflict pain beyond that necessary to end the condemned prisoner's life. *In re Kemmler*, 136 U.S. 436, 447 (1890). "Punishments are cruel when they involve torture or a lingering death . . . something more than the mere extinguishment of life." *Id.*

---

[1]*See* Exhibit B for documents relating to exhaustion of administrative remedies.

58.     Defendants, acting under color of federal law, intend to execute the Plaintiff in a manner that is arbitrary, cruel, and/or unreliable, and which will inflict, or has a foreseeable and significant, but completely avoidable and therefore unnecessary, risk of causing the Plaintiff excruciating but unnecessary pain in the process of carrying out their execution.  Because it is foreseeable that it will inflict unnecessary and savage pain upon the Plaintiff, it violates the Plaintiff's constitutional right to be free from arbitrary, capricious, cruel, and unusual punishment, which right is secured and guaranteed to them by the Eighth Amendment of the United States Constitution.

## VII.

### Third Claim: Eighth Amendment Violation - Deliberate Indifference

59.     Plaintiff incorporate by reference the allegations of paragraphs 1 through 58.

60.     The Eighth Amendment forbids "deliberate indifference" to "serious medical needs of prisoners," *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

61.     BOP undertakes to provide inmates with medical care that is "presently medically necessary," defined as treatment "without which an inmate could not be maintained ... without significant pain or discomfort."  Federal Bureau of Prisons, U.S. Dep't of Justice, Program Statement, No. 6000.04 (Dec. 15, 1994) ("Health Services Manual"), Ch. 1, § 1.

62.     The choice of a course of medical treatment may violate the Eighth Amendment where it is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *vacated and remanded on other grounds sub nom.*, *Cannon v. Thomas*, 419 U.S. 813 (1974).

63.     The defendants are required to provide the Plaintiff with appropriate medical care until the moment of their deaths. Thus, the Eighth Amendment's proscription against "deliberate indifference" requires that they administer the death penalty without the "unnecessary and wanton infliction of pain." However, the means chosen by the defendants anesthetize the Plaintiff to prevent them from experiencing the excruciating pain associated with the lethal injection of potassium chloride are "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." Thus, the means by which the defendants have chosen to anesthetize the Plaintiff prior to their execution violates the Plaintiff's right, secured and guaranteed to them by the Eighth Amendment of the United States Constitution, to be free from deliberate indifference to serious medical needs.

## VIII.

### Fourth Claim: Violation of Administrative Procedure Act -Ultra Vires Agency Action

64.     Plaintiff incorporate by reference the allegations of paragraphs 1 through 63.

65.     Under § 706(2)(c) of the Administrative Procedure Act, a reviewing court must set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations ...." 5 U.S.C. § 706(2)(c) (2000).

66.     The regulations promulgated by the defendants to implement the death sentences imposed upon the Plaintiff under 21 U.S.C. § 848(1), including both the final agency action published at 58 Fed. Reg. 4898 (1993) and any and all Lethal Injection Protocols promulgated by the defendants, were promulgated without any "statutory jurisdiction, authority, or limitations," and must therefore be set aside. 5 U.S.C. § 706(2)(c).

## IX.

### Fifth Claim: Violation of Administrative Procedure Act Agency Action that Is Arbitrary, Capricious, An Abuse Of Discretion And Otherwise Not in Accordance with Law in Promulgating the Lethal Injection Regulations.

67.    Plaintiff incorporate by reference the allegations of paragraphs 1 through 66.

68.    The APA imposes upon the defendants a number of non-discretionary duties regarding rule-making procedures.  5 U.S.C. § 553 (2000). The APA requires a federal agency to provide adequate notice to the public regarding the nature, scope and effects of any proposed or final agency action. The APA also requires that the federal agency provide the public with a full and fair opportunity to comment regarding any proposed agency action.  The defendants failed to provide adequate notice, or opportunity for the public to comment on, the Lethal Injection Protocol prior to its promulgation.

69.    The APA also required the defendants to consider and respond to any public comments submitted, and where appropriate, revise the Final Rule accordingly.  The defendants failed to respond adequately - or at all - to numerous public comments.  Defendants also failed to correct deficiencies in the Final Rule that the comments identified.

70.    The APA also requires a federal agency to fully articulate its basis and reasons regarding any final agency action.  The defendants have failed to explain adequately the basis and reason(s) for its decision to adopt lethal injection as the means of execution, or for the specific procedures adopted in the Lethal Injection Protocol.

71.    The defendants' failure to comply with the APA's procedural requirements was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  Therefore,

in issuing the Proposed Rule, promulgating the Final Rule, and promulgating the Lethal Injection

Protocol, the defendants violated the APA, and their actions must be set aside.

## X.

### Sixth Claim: Violation of Administrative Procedure Act – Arbitrary And Capricious Failure To Exercise Enforcement Authority Under The CSA.

72.     Plaintiff incorporate by reference the allegations of paragraphs 1 - 71.

73.     The CSA makes it unlawful to "dispense" any "controlled substance" except

pursuant to a prescription "issued for a legitimate medical purpose by an individual practitioner

acting in the usual course of his professional practice" and who has obtained a registration

pursuant to the statute.  21 U.S.C. §§ 822, 829; 841(a)(1) (2000).

74.     Sodium thiopental is a Schedule III controlled substance.

75.     Regulations promulgated by the Drug Enforcement Administration provide that

every person who "dispenses" a "controlled substance" is required to obtain a "registration."

21 C.F.R. § 1301.11 (2005).  The regulations also provide that the Administrator of the Drug

Enforcement Administration "shall deny" an application for registration unless the issuance

of a registration is "required" under the CSA.  21 C.F.R. § 1301.35 (2005).

76.     On information and belief, the Lethal Injection Protocol calls for the dispensing

of sodium thiopental absent a valid prescription, by a person or persons who lack a valid

registration.  Moreover, on information and belief, the defendants have arbitrarily and

capriciously failed to exercise their authority to enforce the CSA, by not requiring the persons

whom the defendants intend to dispense controlled substances to the Plaintiff to apply for a

registration, and will continue to act arbitrarily and capriciously by permitting them to dispense

a controlled substance without doing so.  Such arbitrary and capricious action violates the APA.

## XII.

## Prayer for Relief

77.    In order to prevent the defendants from violating the Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution and the Administrative Procedure Act, the Plaintiff requests that this Court grant preliminary and permanent injunctive relief barring the defendants from executing the Plaintiff by means of the Lethal Injection Protocol.

78.    The Plaintiff is entitled to a preliminary injunction barring the defendants from executing him by the Lethal Injection Protocol because (a) there is a significant likelihood that the Plaintiff will prevail on the merits; (b) the Plaintiff will suffer irreparable harm if he is executed pursuant to the Lethal Injection Protocol; (c) there is a compelling public interest in ensuring that our government not behave like nations we roundly condemn for utilizing execution methods violative of our nation's constitutional proscription against cruel and unusual punishment; and (d) there is a substantial possibility that others under a sentence of death will suffer unconstitutional executions unless this Court requires that defendants design and adopt constitutionally acceptable execution procedures.

79.    The Plaintiff does not seek relief herein as a means of attacking his underlying convictions or death sentence; rather than seeking to stop this executions per se, he seeks to stop the defendants from executing him in a manner that violates their constitutional and statutory rights. If the defendants implement execution procedures that do not violate the Plaintiff's constitutional rights, then the defendants will be entitled to execute the Plaintiff barring relief granted through some other judicial or clemency proceeding.

80.    The Plaintiff further request that this Court grant declaratory relief by issuing an

Order declaring that the defendants' current means, methods, practices, procedures, and customs

regarding execution violate the Fifth and Eighth Amendments to the United States Constitution,

and the Administrative Procedure Act.

81.    See Certificate of Representation Without Compensation Pursuant to District of

Columbia Local Rule 83.2(g), attached as Exhibit A.

82.    The Plaintiff request that the Court grant such further relief as it deems just and

proper.

Dated: November 26, 2007                    Respectfully submitted,

                                            SEAN K. KENNEDY
                                            Federal Public Defender

                                            CRAIG A. HARBAUGH (D.C. Bar No. 974117)
                                            Deputy Federal Public Defender
                                            SEAN K. KENNEDY (CA Bar. No. 145632)
                                            Federal Public Defender
                                            Office of the Federal Public Defender
                                                 for the Central District of California
                                            321 E. 2nd Street
                                            Los Angeles, CA  90012
                                            (213) 894-7865

                                            MICHAEL B. CHARLTON (TX No. 04144800)
                                            Assistant Federal Public Defender
                                            411 E. Bonneville, Ste. 250
                                            Las Vegas, Nevada 89101
                                            (702) 388-5106

                                            *Counsel for Plaintiff Julius O. Robinson*

# EXHIBIT A

**CERTIFICATE OF REPRESENTATION WITHOUT COMPENSATION**

**PURSUANT TO DISTRICT OF COLUMBIA LOCAL RULE 83.2(g)**

I, Craig A. Harbaugh, hereby certify as follows:

1. I am a Deputy Federal Public Defender in the Central District of California. Since May 2007, I have been a member in good standing of the District of Columbia bar. I am also a member of the bars of California and Virginia. I am not yet a member of the United States District Court for the District of Columbia but I intend to submit my application shortly.

2. On July 20, 2005, the Federal Public Defender's Office in the Central District of California was appointed to represent Julius Omar Robinson in habeas proceedings pursuant to 28 U.S.C. § 2255. Mr. Robinson is a death-sentenced inmate and is incarcerated at the U.S. Penitentiary in Terre Haute, Indiana.

3. Mr. Robinson is scheduled to die by lethal injection. The only way for Mr. Robinson to challenge the legality of the executed method is by filing a civil action, separate from his 2255 habeas proceedings. Mr. Robinson has asked me to initiate the instant suit on his behalf.

4. Mr. Robinson is indigent and cannot afford private counsel to represent him in the instant action. As a Deputy Public Defender, I am willing to represent Mr. Robinson without any compensation.

I certify under penalty of perjury that the foregoing is true and correct. Executed on

November 26, 2007

Craig A. Harbaugh
Deputy Federal Public Defender

# EXHIBIT B

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From:  ROBINSON, JULIUS O.        26190-177      SCU      USP/TERRE HAUTE
            LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL** This is an appeal of the Regional Director's response to Admin. Remedy Number 450122-R1 dated 6/13/07 and delivered to Mr. Robinson on June 20, 2007 by Counselor Bruce Ryherd. See: S.E.#1 That response does not adequately address the issues presented in the Regional Administrative Remedy Appeal. That response merely repeats the language contained in the BP 8 and BP 9 responses which are attached hereto. I hereby re-raise each and every issue contained in the BP 9 and BP 10. I ask that Mr. Robinson be provided with the specific information relating to the drugs to be used as a part of his execution, who the qualified medical personnel are who will administer the drugs, what their training is and what the exact protocol governing the execution entails. These issues have not been addressed by the Warden or Regional Director. Copies of the requested protocol and information requested have not been provided. Mr. Robinson requests the relief sought herein as well as all other relief to which he is entitled.

June 25, 2007                                      _Julius O Robinson_
_____                    _____
DATE                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____                    _____
DATE                                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                              CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: _____

_____          ⊛          _____
DATE                        Printed on Recycled Paper    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
USP LVN                                                                          BP-231(13)
                                                                                 APRIL 1982

JULIUS OMAR ROBINSON, 26190-177
TERRE HAUTE USP    UNT: SCU    QTR: X02-318L
4700 BUREAU ROAD SOUTH
TERRE HAUTE,  IN 47802

RECEIVED JUN 2 0 2007

BP 11 SUPPORTING EXHIBIT #1

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Admin Remedy Number**: 450122-R1

This is in response to your Regional Administrative Remedy Appeal received on May 25, 2007, in which you allege the current method of execution utilized by the federal government violates the Fifth and Eighth Amendments to the Constitution. Included in your request, and as it relates to your Fifth Amendment claim, you seek specific information regarding the methodology of execution utilized by the federal government.

In accordance with Title 28, Code of Federal Regulations, Section 26.3, a sentence of death in a federal case shall be implemented by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death. The method of execution utilized by the Bureau of Prisons set forth in the federal regulations is implemented by appropriately trained and qualified personnel in a manner that minimizes the risk of unnecessary pain and suffering.

Pursuant to Program Statement 1351.05, entitled "Release of Information," requests for any Bureau record ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. § 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street NW, Washington, D.C., 20534.

Based on these findings, this response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_6/18/07_
Date

Michael K. Nalley, Regional Director

U.S. P                                                                    Regional Administrative Remedy Appeal
Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __ROBINSON, JULIUS, O.__ _____ __26190-177__ ____ __SCU__ ____ __USP/TERRE HAUTE__
          LAST NAME, FIRST, MIDDLE INITIAL                    REG. NO.              UNIT              INSTITUTION

**Part A - REASON FOR APPEAL**   This is an appeal of the Warden's response to Remedy #450122-F1 dated 5-11-07 delivered to me on May 16, 2007 See: S.E.#1. The warden failed to directly address the issues presented in the BP 9. I hereby re-raise each and every issue contained in the attached BP 9. The warden failed to disclose what drugs are to be used in a federal execution, and he did not respond to my request for a copy of the execution protocol. While the warden alleges that federal executions are implemented by "appropriate trained qualified personnel in a manner that minimizes the risk of unnecessary pain and suffering." and that "the federal government's procedures were developed after consultation with other jurisdictions " this does nothing to address my issues. Several federal courts have invalidated the execution protocols used by some states, such as those in California and Missouri. The warden did not state what jurisdictions were consulted and how they influnced the protocol eventually adopted by the federal government Additionally the warden did not specify who the personnel are who carries out federal execution or what their training is. These are all issue contained in my BP 9. It is my contention that the BOP Execution Protocol is unconstitutional. I request all available relief.

__May 19, 2007__ _____                          _Julius O Robinson_ _____
          DATE                                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

MAY 2 5 2007

_____                                   _____
          DATE                                                      REGIONAL DIRECTOR
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                               CASE NUMBER: _450122-R1_

**Part C - RECEIPT**
                                                         CASE NUMBER: _____

Return to: _____ _____ _____ _____
                   LAST NAME, FIRST, MIDDLE INITIAL           REG. NO.      UNIT        INSTITUTION
SUBJECT: _____

_____                                   _____
          DATE                              PRINTED ON RECYCLED PAPER    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN                                                                          BP-230(13)
                                                                                 JUNE 2002

JULIUS OMAR ROBINSON, 26190-177
TERRE HAUTE USP    UNT: SCU    QTR: X02-318L
4700 BUREAU ROAD SOUTH
TERRE HAUTE,  IN 47802

. RECEIVED MAY 1 6 2007

Counselor

BP 10 S.E.#1

Remedy #450122-F1

## PART B - RESPONSE

This is in response to your Request for Administrative Remedy receipted April 21, 2007. You are requesting notice of the specific execution protocol and procedures that are used by the Bureau of Prisons. In addition, you state the method of execution used is unreliable and causes unnecessary pain, resulting in cruel and unusual punishment.

The method of execution utilized by the Bureau of Prisons is set forth in 28 CFR 26.1 *et seq.,* and is implemented by appropriate trained and qualified personnel in a manner that minimizes the risk of unnecessary pain and suffering. The federal government's procedures were developed after consultation with other jurisdictions.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Gateway Complex, Tower II, 8th Floor, 4th & State Avenue, Kansas City, Kansas 66101. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_5·11·07_
Date

_____
R. V. Veach, Warden

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: ROBINSON, JULIUS O. | 26190-177 | SCU | USP/TERRE HAUTE |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** On behalf of Mr. Robinson, who is currently incarcerated on the Special Confinement Unit at the United States Penitentiary, Terre Haute, Indiana, I Craig Harbaugh, his attorney, assist him in making this request for Administrative Remedy. Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government. Mr. Robinson has a federally imposed sentence of death.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to conduct his execution. Mr. Robinson requests notice of how the BOP intends to carry out his execution, including notice of the specific method and

| April 17, 2007        (continued on attached page) | *Julius O Robinson* |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

*See attached*

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

| ORIGINAL: RETURN TO INMATE | CASE NUMBER: 445 0122-F |
|---|---|

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| 4 21 07 | | |
|---|---|---|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) | |

USP LVN

BP–229(13)
APRIL 1982

REQUEST FOR ADMINISTRATIVE REMEDY, ATTACHMENT 1

Robinson, Julius, O., Reg. No. 26190-177; SCU, USP/Terre Haute

protocol.

Mr. Robinson also contends the following Eighth Amendment Violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and patassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;

2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering;

3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering; and;

4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.

Mr. Robinson requests all relief available to him through the Administrative Remedy Process.

Attachment 5
THA-1330.7G
03-14-88

U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.7, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.7, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM
================+====================================

INMATE'S NAME: Julius Robinson    REG. NO.: 26190-177    UNIT: SCU

DATE/TIME COMPLAINT RECEIVED FROM INMATE: 4·10·07

NATURE OF COMPLAINT: See Attachment 1

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: See Attached

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION

ATTEMPT: _____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____
                                              DATE

INMATE'S SIGNATURE: _____
                   SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
                              RESOLUTION

(OVER)

Informal Resolution Form - Attachment 1

Robinson, Julius, #26190-177, Institution: USP Terre Haute

On behalf of Mr. Robinson, I, Craig Harbaugh, his attorney, assist him in making this request for informal resolution by which Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to carry out his execution. Mr. Robinson requests notice of how the BOP intends to conduct his execution, including notice of the specific method and protocol.

Mr. Robinson also contends the following Eighth Amendment violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and potassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;
2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering;
3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering, and;
4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.



**U.S. Department of Justice**

Federal Bureau of Prisons

*United States Penitentiary*
*Terre Haute, Indiana*

| | |
|---|---|
| Date: | April 10, 2007 |
| Reply To Attn Of: | B. RYHERD, Correctional Counselor- SCU |
| Subject: | Informal Resolution |
| To: | Robinson, Julius #26190-177 |

This memorandum is in reference to the informal resolution that you filed on April 10, 2007, in which you state the method of execution used is unreliable and causes unnecessary pain, resulting in cruel and unusual punishment.

A review of your request has been conducted.  Title 28, Part 26, Section 26.3 of the Code of Federal Regulations dictates the method of execution to be used. The Bureau of Prisons Execution Protocol provides adequate access to outside individuals, consistent with the efficient administration of sentences of death, including applicable security concerns. Further, the lethal injection procedures referenced in the Protocol will be carried out in a humane manner by appropriately trained and qualified personnel. The procedures will not cause unnecessary pain and suffering.

This method of execution has been challenged in the courts. To date, no federal court has ruled that our method of execution constitutes cruel and unusual punishment

**Administrative Remedy No. 450122-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you challenge the current method of execution
utilized by the Bureau of Prisons.  You claim it violates your
Fifth Amendment right to notice and due process of law as well as
the Eighth Amendment prohibitions against cruel and unusual
punishment and deliberate indifference to serious medical needs.
You request specific information relating to the drugs to be used
as part of the execution, who the qualified medical personnel are
who will administer the drugs, what their training is, and what
the exact protocol governing the execution entails.

In accordance with Title 28, Code of Federal Regulations, Section
26.3, a sentence of death in a federal case shall be implemented
by intravenous injection of a lethal substance or substances in a
quantity sufficient to cause death.  The lethal substances used
in the execution process are, in order of their use, sodium
pentothal, which causes unconsciousness, pancuronium bromide, a
muscle relaxer that stops respiration, and potassium chloride,
which stops the heart.  The lethal injection procedures
prescribed by the Execution Protocol are administered in a humane
manner by appropriately trained and qualified personnel.
Therefore, the method of execution currently used by the Bureau
of Prisons is in accordance with 28 C.F.R. § 26.3.

The information you request regarding what the exact protocol
governing the execution entails is not releasable through local
access procedures.  You may request access to the information
pursuant to the Freedom of Information Act/Privacy Act (FOIA/PA)
and in accordance with Program Statement 1351.05, Release of
Information.  Your request should be forwarded to the Bureau of
Prisons' Freedom of Information Act (FOIA) Office at 320 First
Street, N.W., Washington, D.C. 20534.  Both the face of the
letter and envelope should be clearly marked "Freedom of
Information Act Request."

This response is provided for informational purposes only.


_August 31, 2007_
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: ROBINSON, JULIUS O.                 26190-177        SCU        USP/TERRE HAUTE
_____
         LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.          UNIT              INSTITUTION

**Part A—REASON FOR APPEAL** This is an appeal of the Regional Director's response to Admin. Remedy Number 450122-R1 dated 6/13/07 and delivered to Mr. Robinson on June 20, 2007 by Counselor Bruce Ryherd. See: S.E.#1 That response does not adequately address the issues presented in the Regional Administrative Remedy Appeal. That response merely repeats the language contained in the BP 8 and BP 9 responses which are attached hereto. I hereby re-raise each and every issue contained in the BP 9 and BP 10. I ask that Mr. Robinson be provided with the specific information relating to the drugs to be used as a part of his execution, who the qualified medical personnel are who will administer the drugs, what their training is and what the exact protocol governing the execution entails. These issues have not been addressed by the Warden or Regional Director. Copies of the requested protocol and information requested have not been provided. Mr. Robinson requests the relief sought herein as well as all other relief to which he is entitled.

June 25, 2007                                    _Julius O Robinson_
_____                    _____
        DATE                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

# RECEIVED

JUL 0 5 2007

Administrative Remedy Section
Federal Bureau of Prisons

_____                    _____
        DATE                                        GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE              CASE NUMBER: _450122-A1_
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Part C—RECEIPT**                                CASE NUMBER: _____

Return to: _____
               LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.          UNIT              INSTITUTION

SUBJECT: _____

_____                    _____
        DATE                                 SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                                        BP-231(13)
                                                                               APRIL 1982

Printed on Recycled Paper

```
JULIUS OMAR ROBINSON, 26190-177
TERRE HAUTE USP     UNT: SCU     QTR: X02-317L
4700 BUREAU ROAD SOUTH
TERRE HAUTE,  IN 47802
```

RECEIVED SEP 1 1 2007

Attachment 5
THA-1330.7G
03-14-88

U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.7, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.7, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM
=============*==================================*========

INMATE'S NAME: _Julius Robinson_    REG. NO.: _26190-177_    UNIT: _SCG_

DATE/TIME COMPLAINT RECEIVED FROM INMATE: _4·10·07_

NATURE OF COMPLAINT: _See Attachment 1_

_____

_____

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: _See Attached_

_____

_____

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION

ATTEMPT: _____

_____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____
                                              DATE

INMATE'S SIGNATURE: _____
                    SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
                                    RESOLUTION

(OVER)

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: ROBINSON, JULIUS, O.                26190-177        SCU          USP/TERRE HAUTE
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT         INSTITUTION

**Part A - REASON FOR APPEAL**   This is an appeal of the Warden's response to Remedy #450122-F1 dated 5-11-07 delivered to me on May 16, 2007 See: S.E.#1. The warden failed to directly address the issues presented in the BP 9. I hereby re-raise each and every issue contained in the attached BP 9. The warden failed to disclose what drugs are to be used in a federal execution, and he did not respond to my request for a copy of the execution protocol. While the warden alleges that federal executions are implemented by "appropriate trained qualified personnel in a manner that minimizes the risk of unnecessary pain and suffering." and that "the federal government's procedures were developed after consultation with other jurisdictions " this does nothing to address my issues. Several federal courts have invalidated the execution protocols used by some states, such as those in California and Missouri. The warden did not state what jurisdictions were consulted and how they influnced the protocol eventually adopted by the federal government. Additionally the warden did not specify who the personnel are who carries out federal executions or what their training is. These are all issue contained in my BP 9. It is my contention that the BOP Execution Protocol is unconstitutional. I request all available relief.

May 19, 2007
_____                          _Julius O Robinson_____
DATE                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____                          _____
DATE                                      REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**                      CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.    UNIT        INSTITUTION

SUBJECT: _____

_____                          _____
DATE                                      SIGNATURE, RECIPIENT OF REGIONAL APPEAL

                                                                    BP-230(13)
                                                                    JUNE 2002
USP LVN                 PRINTED ON RECYCLED PAPER

**U.S. Department of Justice**

Federal Bureau of Prisons

---

*United States Penitentiary*
*Terre Haute, Indiana*

Date:    April 10, 2007

Reply To    B. RYHERD,
Attn Of:    Correctional Counselor- SCU

Subject:    Informal Resolution

To:    Robinson, Julius #26190-177

This memorandum is in reference to the informal resolution that you filed on April 10, 2007, in which you state the method of execution used is unreliable and causes unnecessary pain, resulting in cruel and unusual punishment.

A review of your request has been conducted. Title 28, Part 26, Section 26.3 of the Code of Federal Regulations dictates the method of execution to be used. The Bureau of Prisons Execution Protocol provides adequate access to outside individuals, consistent with the efficient administration of sentences of death, including applicable security concerns. Further, the lethal injection procedures referenced in the Protocol will be carried out in a humane manner by appropriately trained and qualified personnel. The procedures will not cause unnecessary pain and suffering.

This method of execution has been challenged in the courts. To date, no federal court has ruled that our method of execution constitutes cruel and unusual punishment

JULIUS OMAR ROBINSON, 26190-177
TERRE HAUTE USP    UNT: SCU    QTR: X02-318L
4700 BUREAU ROAD SOUTH
TERRE HAUTE,  IN 47802

RECEIVED MAY 1 6 2007

Counselor

BP 10 S.E.#1

Remedy #450122-F1

## PART B - RESPONSE

This is in response to your Request for Administrative Remedy receipted April 21, 2007. You are requesting notice of the specific execution protocol and procedures that are used by the Bureau of Prisons. In addition, you state the method of execution used is unreliable and causes unnecessary pain, resulting in cruel and unusual punishment.

The method of execution utilized by the Bureau of Prisons is set forth in 28 CFR 26.1 *et seq.*, and is implemented by appropriate trained and qualified personnel in a manner that minimizes the risk of unnecessary pain and suffering. The federal government's procedures were developed after consultation with other jurisdictions.

Accordingly, this response to your Request for Administrative Remedy is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Gateway Complex, Tower II, 8th Floor, 4th & State Avenue, Kansas City, Kansas 66101. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_5·11·07_
Date

_R. V. Veach, Warden_

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ROBINSON, JULIUS O.          26190-177          SCU          USP/TERRE HAUTE

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

**Part A– INMATE REQUEST** On behalf of Mr. Robinson, who is currently incarcerated on the Special Confinement Unit at the United States Penitentiary, Terre Haute, Indiana, I Craig Harbaugh, his attorney, assist him in making this request for Administrative Remedy. Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government. Mr. Robinson has a federally imposed sentence of death.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to conduct his execution. Mr. Robinson requests notice of how the BOP intends to carry out his execution, including notice of the specific method and

April 17, 2007     (continued on attached page)     *Julius O Robinson*

| DATE | SIGNATURE OF REQUESTER |
|---|---|

**Part B– RESPONSE**

*see attached*

---

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 445 0122-F

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

4 21 07

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|---|---|

BP–229(13)
APRIL 1982

REQUEST FOR ADMINISTRATIVE REMEDY, ATTACHMENT 1

Robinson, Julius, O., Reg. No. 26190-177; SCU, USP/Terre Haute

protocol.

Mr. Robinson also contends the following Eighth Amendment Violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and patassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;

2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering:

3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering; and;

4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.

Mr. Robinson requests all relief available to him through the Administrative Remedy Process.

Attachment 5
THA-1330.7G
03-14-88

U. S. PENITENTIARY/FEDERAL PRISON CAMP

Terre Haute, Indiana

### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.7, Administrative Remedy Procedure for Inmates, states "Inmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy."

In keeping with the spirit and intent of Bureau of Prisons Program Statement 1330.7, the following form shall be utilized by staff in attempting to informally resolve an inmate's complaint.

ONLY ONE (1) COMPLAINT SHALL BE PLACED ON EACH FORM
==============+=====================================

INMATE'S NAME: _Julius Robinson_    REG. NO.: _26190-177_    UNIT: _SCU_

DATE/TIME COMPLAINT RECEIVED FROM INMATE: _4·10·07_

NATURE OF COMPLAINT: _See Attachment 1_

_____

_____

ACTION TAKEN TO INFORMALLY RESOLVE COMPLAINT: _See Attached_

_____

_____

THE APPLICABLE PROGRAM STATEMENT USED IN THIS INFORMAL RESOLUTION

ATTEMPT: _____

_____

INFORMAL RESOLUTION WAS ACCOMPLISHED: _____
                                             DATE

INMATE'S SIGNATURE: _____
              SIGNATURE INDICATES INMATE'S ACCEPTANCE OF
                         RESOLUTION

(OVER)

Attachment 5
Page 2
THA-1330.7G
03-14-88

INFORMAL RESOLUTION <u>WAS NOT ACCOMPLISHED</u>:    ( ✓ )   CHECK BOX

EXPLANATION FOR NON-RESOLUTION:   <u>TO BE COMPLETED BY COUNSELOR</u>

Inmate is not satified w/ attempts @
resolution.

_____

_____

_____

EXTENSION GRANTED ON:_____

EXTENSION GRANTED BY:_____
                          NAME AND TITLE

CORRECTIONAL COUNSELOR'S SIGNATURE: B Bu_____ DATE: 4-19-07

UNIT MANAGER'S COMMENTS, ASSISTANCE, AND REVIEW: Concur_____

_____

_____

UNIT MANAGER'S SIGNATURE: for B Rue_____ DATE: 4-19-07

DATE ADMINISTRATIVE REMEDY ISSUED:_____ 4-16-07 _____

DATE ADMINISTRATIVE REMEDY RECEIVED BACK FROM INMATE:___ 4-17-07 ___

DATE ADMINISTRATIVE REMEDY DELIVERED TO PARALEGAL SPECIALIST: 4-19-07

DISTRIBUTION:

1.  If complaint is <u>INFORMALLY RESOLVED</u>, forward original Informal
    Resolution Form to the Administrative Remedy Clerk
    [AW(O) Secretary].

2.  If complaint <u>IS NOT INFORMALLY RESOLVED</u>, forward original
    Informal Resolution Form, attached to Administrative Remedy, to
    the Paralegal Specialist for review.

Informal Resolution Form - Attachment 1

Robinson, Julius, #26190-177, Institution: USP Terre Haute

On behalf of Mr. Robinson, I, Craig Harbaugh, his attorney, assist him in making this request for informal resolution by which Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to carry out his execution. Mr. Robinson requests notice of how the BOP intends to conduct his execution, including notice of the specific method and protocol.

Mr. Robinson also contends the following Eighth Amendment violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and potassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;
2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering;
3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering, and;
4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.



**U... Department of Justice**

Federal Bureau of Prisons

---

*United States Penitentiary*
*Terre Haute, Indiana*

Date:       April 10, 2007

Reply To    B. RYHERD,
Attn Of:    Correctional Counselor- SCU

Subject:    Informal Resolution

To:         Robinson, Julius #26190-177

This memorandum is in reference to the informal resolution that you filed on April 10, 2007, in which you state the method of execution used is unreliable and causes unnecessary pain, resulting in cruel and unusual punishment.

A review of your request has been conducted. Title 28, Part 26, Section 26.3 of the Code of Federal Regulations dictates the method of execution to be used. The Bureau of Prisons Execution Protocol provides adequate access to outside individuals, consistent with the efficient administration of sentences of death, including applicable security concerns. Further, the lethal injection procedures referenced in the Protocol will be carried out in a humane manner by appropriately trained and qualified personnel. The procedures will not cause unnecessary pain and suffering.

This method of execution has been challenged in the courts. To date, no federal court has ruled that our method of execution constitutes cruel and unusual punishment

Informal Resolution Form - Attachment 1

Robinson, Julius, #26190-177, Institution: USP Terre Haute

On behalf of Mr. Robinson, I, Craig Harbaugh, his attorney, assist him in making this request for informal resolution by which Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to carry out his execution. Mr. Robinson requests notice of how the BOP intends to conduct his execution, including notice of the specific method and protocol.

Mr. Robinson also contends the following Eighth Amendment violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and potassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;
2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering;
3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering, and;
4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: ROBINSON, JULIUS O.                26190-177        SCU         USP/TERRE HAUTE
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.        UNIT          INSTITUTION

**Part A– INMATE REQUEST** On behalf of Mr. Robinson, who is currently incarcerated on the Special Confinement Unit at the United States Penitentiary, Terre Haute, Indiana, I Craig Harbaugh, his attorney, assist him in making this request for Administrative Remedy. Mr. Robinson seeks to challenge the current lethal injection method of execution utilized by the federal government. Mr. Robinson has a federally imposed sentence of death.

Mr. Robinson challenges the current lethal injection method of execution as violating the Fifth Amendment right to notice and to due process of law as well as the Eighth Amendment prohibitions against cruel and unusual punishment and against deliberate indifference to serious medical needs.

Mr. Robinson first challenges the lack of notice of the specific protocol and procedures the Bureau of Prisons intends to use to conduct his execution. Mr. Robinson requests notice of how the BOP intends to carry out his execution, including notice of the specific method and

April 17, 2007        (continued on attached page)      *Julius O. Robinson*
      DATE                                              SIGNATURE OF REQUESTER

**Part B– RESPONSE**



_____                    _____
        DATE                               WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE               CASE NUMBER: _____

                                         CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.        UNIT         INSTITUTION

SUBJECT: _____

_____         ⊛              _____
        DATE                                   RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN              Printed on Recycled Paper                      BP-229(13)
                                                                   APRIL 1982

REQUEST FOR ADMINISTRATIVE REMEDY, ATTACHMENT 1

Robinson, Julius, O., Reg. No. 26190-177; SCU, USP/Terre Haute

protocol.

Mr. Robinson also contends the following Eighth Amendment Violations:

1. The specific drugs and dosages to be utilized (sodium thiopental, pancuronium bromide and patassium chloride) as well as the manner in which the drugs are stored, chosen, administered and delivered will cause him needless pain and suffering;

2. The manner of IV access and the procedure to be followed if there are problems during the execution procedure will cause him needless pain and suffering:

3. The lack of training and qualifications of personnel involved in all aspects of his execution, including the drug delivery will cause him needless pain and suffering; and;

4. The failure to have qualified personnel present to monitor and assure adequate anesthesia and to be able to provide other necessity medical care should medical emergencies arise during the execution will cause him needless pain and suffering.

Mr. Robinson requests all relief available to him through the Administrative Remedy Process.

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Julius Robinson | Michael B. Mukasey, Karen Tandy, Harry G. Lappin, Newton E. Kendig, II., M.D., Richard V. Veach, Thomas Webster, M.D., Alan R. Doerhoff, M.D., John Does I-IV, Individually and in their official capacities |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Vigo County<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Craig A. Harbaugh, Deputy Federal Public Defender<br>D.C. Bar No. 974117<br>Office Office of the Federal Public Defender<br>321 East 2nd Street, Los Angeles, CA 90012-4202 | |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | ⊙ **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    O 2 Removed from State Court    O 3 Remanded from Appellate Court    O 4 Reinstated or Reopened    O 5 Transferred from another district (specify)    O 6 Multi district Litigation    O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

U.S. Const. Amend. V, VIII, Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), 5 U.S.C. § 551

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐    NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE _11-26-07_    SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**

Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.